Elizabeth WELLS et al., Appellants,

v.

Charles BARNETT, Individually, etc., et al., Appellees.

Court of Appeals of Kentucky.

Nov. 19, 1971.

As Modified on Denial of Rehearing Feb. 4, 1972.

David Proffitt, J W Jones, Louisville, for appellants.

Ralph Mitchell, Saunders, Mitchell & Mathis, Fred Bond, Shelbyville, Richard J. Lowther, Ames, Iowa, for appellees.

CULLEN, Commissioner.

In a suit by Charles Barnett against his brother and four sisters, judgment was entered decreeing specific performance of a contract which Charles had entered into with his widowed mother, prior to her death, for purchase of the family farm. Two of the sisters have appealed and the other two sisters and the brother, though named as appellees, have indicated their concurrence in the arguments made in the appellants' brief.

In April 1957 Charles entered into a contract with his widowed mother, under which he agreed to purchase a *one-half interest* in the family farm. The consideration was that Charles would assume and pay a $17,-000 mortgage on the farm, and execute to his mother an unsecured note for $3,000, at four-percent interest, payable on March

1, 1960. The contract provided that a deed would be delivered on or before three years from March 1, 1957. Provision was made in the contract for a share operation of a dairy on the farm. The contract contained a further provision giving Charles an option, running until four years after his mother's *death*, to purchase the other one-half of the farm (and some personalty) for $20,000.

Shortly after the contract was entered into, Charles took possession of the farm and he continued thereafter to operate it, paying his mother one-fourth of the net income (on the basis of equally sharing the income from the mother's retained one-half interest). Charles paid the interest on the mortgage and made sufficient of the specified payments on the principal to keep the mortgagee satisfied, although he did not comply fully with the requirements specified in the mortgage instrument as to payments on the principal. It appears that Charles executed the $3,000 note to his mother, but he never made any payments on the note, either of interest or of principal.

Charles' mother lived until April 13, 1963. She at no time made any demand upon Charles for payment of the $3,000 note, nor did he make any demand upon her for delivery of a deed.

After the mother's death, Charles continued for almost four years to occupy and operate the farm on the same basis as before her death. There were some discussions from time to time between Charles and his brother and sisters, and a suit to settle the estate was filed, but never was the question of Charles' rights and obligations under the contract squarely faced up to. Eventually, one day before the expiration of four years from the mother's death, Charles gave notice of election to exercise the option to purchase the other one-half of the farm.

The brother and sisters refused to execute a deed, so Charles brought the instant suit for specific performance.

The judgment decreeing specific performance required Charles to pay the $3,000 note, with interest from its inception, and to pay the $20,000 option price for the second one-half of the farm.

The appellants maintain that specific performance should not have been granted because Charles had abandoned the contract, or had so breached it or was so in default as to forfeit any right to enforce it, or the contract had been terminated by mutual agreement or acquiescence. The various arguments all rest on the same basic foundation, which is the failure of payments on the $3,000 note.

There is no evidence that the mother ever made any demand for payment of principal or interest on the $3,000 note. After her death, the brother and sisters never made any such demand nor did they make any complaint to Charles concerning the delinquency on the note.

The contract of sale did not expressly make payment of the note a condition of the delivery of the deed, and the conduct of the parties does not indicate that they intended such a condition. Therefore, nonpayment of the note was not a breach of the contract of sale such as would bar Charles from enforcing the contract. See 55 Am. Jur., Vendor and Purchaser, sec. 107, pp. 583, 584; 91 C.J.S. Vendor and Purchaser § 109 b (3), p. 1023. This is particularly so because, during the period the note remained unpaid, the mother and the brother and sisters received the benefits of Charles' continued substantial performance of the contract with reference to assumption of the mortgage.

The judgment is affirmed.

All concur.